# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| VAN N. EPPS | : | NO. 12-150 |

**DuBois, J.**                                                                **December 10, 2012**

## M E M O R A N D U M

### I. INTRODUCTION

Defendant Van N. Epps is charged with four counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Presently before the Court is Defendant's Motion to Suppress Physical Evidence and Statements and Request for a Franks Hearing. The Court conducted an evidentiary hearing and heard oral argument on the motion on December 3, 2012. For the reasons set forth below, the Court denies the motion.

### II. BACKGROUND

Epps's home – 2131 Sears Street, Philadelphia, Pennsylvania – was searched pursuant to a warrant on May 5, 2011. Various forms of child pornography were found there. The warrant was accompanied by an affidavit sworn by Immigration and Customs Enforcement Special Agent Daniel Roman and was issued on May 3, 2011 by Magistrate Judge Linda Caracappa. (Mot. Ex. A.)

The warrant was based on information provided to Agent Roman through the following route: Certain websites and internet service providers discovered uploads of child pornography

through their services. (See Mot. Ex. C; Tr. at 17-18.) They notified the Cyber Tipline of the National Center for Missing and Exploited Children ("the Center"). (Mot. Ex. C; Tr. at 16-17.) The Center received 20 reports concerning a total of 234 uploads. (Mot. Ex. C.) The Center then reported this information to the Pennsylvania Internet Crimes Against Children Task Force (the "Task Force"). (Mot. Ex. B at 2, 8; Tr. at 16-17.) The Task Force conducted an investigation based on the Cyber Tipline reports. (Mot. Ex. B; Tr. at 19-20.) A summary of their investigation and the reports themselves were passed on to Agent Roman. (Mot. Ex. B; Tr. at 19; 26-27.)

A. Dates of Uploads and Reports

Between May 4, 2009 and May 12, 2010, the Task Force received information from the Center that someone had been uploading child pornography: approximately 24 to 12 months before the warrant was issued. (Mot. Ex. B at 2, 8.) However, the uploads themselves took place between February 19, 2009 and August 31, 2009: approximately 26 to 20 months before the warrant was issued. (Mot. Ex. C.)

The affidavit generally states the dates that the Task Force received information from the Center, but it does not include the dates of the actual uploads. (See Ex. A, Affidavit at 4-6.) Additionally, the affidavit uses the header, "Activity in 2010." (Id. at 5.) That part of the affidavit does not, in fact, refer to uploading activity. Rather, it refers to the dates that the Task Force received the reports from the Center. Finally, in paragraph four, the affidavit states that uploads occurred until May 12, 2010. (Id. at 1.) While this is the last date the Task Force received a report from the Center, no actual uploads occurred after August 31, 2009. (Mot. Ex. B at 8; Mot. Ex. C. at 2.)

When preparing the affidavit, Agent Roman relied primarily on the Task Force's summary of the Cyber Tipline Reports. (Tr. at 25-26.) Though he had the Cyber Tipline Reports themselves, he never looked at them. (Id. at 27-28.) The Task Force's summary generally refers to the date it received the Cyber Tipline Reports, not the date the actual uploading occurred. (Mot. Ex. B at 2, 8.) However, for one set of uploads, the summary also includes a list of the names of the files that were uploaded, accompanied by the file's upload date. (Id. at 5-6.) Agent Roman did not see these dates in the summary. (Tr. at 29.)

B.  Epps's Change of Address

According to the affidavit, by tracing an IP address and through other forms of investigation, Agent Roman was able to link the uploads to Van Epps, who lived at 202 Marshall Avenue, Collingdale, Pennsylvania. (See Ex. A, Affidavit at 4-8.) Later, Epps posted on his Twitter account that he "got married." (Id. at 5.) After further investigation, Agent Roman learned that Epps moved to 2131 Sears Street, Philadelphia, Pennsylvania. (Id. at 7.) That address was searched pursuant to the warrant. At the time of the search there was no direct evidence that any uploads occurred at the Sears Street address.

C.  Tendencies of Child Pornography Collectors and the Nature of Computer Files

In the affidavit, Agent Roman stated that based on his knowledge, experience, and training, those who receive child pornography tend to keep their collections close by. (Id. at 8-9.) Such individuals, he explained, maintain their materials, "even if they move physical, geographic locations." (Id. at 9.)

Additionally, agent Roman stated in the affidavit that files or the remnants of files can be recovered years after they have been downloaded. (Id. at 11.) When a user "deletes" a file, that

file typically is not actually removed from the computer. (Id.) Rather, it remains on the computer until it is overwritten. (Id.)

## III. LEGAL STANDARD

Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

> [P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime. . . . A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

United States v. Hodge, 246 F.3d 301, 305-06 (3d Cir. 2001) (internal citations and quotations omitted).

A district court exercises only a deferential review of the initial probable cause determination made by the magistrate judge. Gates, 462 U.S. at 236; Hodge, 246 F.3d at 305. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39 (citation omitted); see also Hodge, 246 F.3d at 305. "In making this determination, the Court confines itself to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record." Hodge, 246 F.3d at 305 (internal quotations omitted).

## IV. DISCUSSION

Defendant's supression motion presents three issues: (A) whether there is a sufficient nexus between child pornography and 2131 Sears Street; (B) whether the information regarding the uploads was stale and whether Epps is entitled to a Franks hearing based on the dates stated

4

in the warrant; and (C) whether the good faith exception applies.

      A.      Nexus to 2131 Sears Street

Epps argues that since all the uploads occurred at 202 Marshall Avenue, probable cause did not exist to search Epps's new home, 2131 Sears Street. The Court rejects that argument.

           (a)      Legal Standard

The Third Circuit has repeatedly held that evidence linking a crime to the location to be searched is not required to establish probable cause. United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002); United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000). "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant." Whitner, 219 F.3d at 297. Instead, as previously discussed, "probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." Id. (internal quotations omitted).

           (b)      Sufficiency of the Nexus

Epps principally relies on two cases to argue that there was not a sufficient nexus to 2131 Sears Street to justify the issuance of the search warrant: United States v. Loy, 191 F.3d 360 (3d Cir. 1999) and United States v. Zimmerman, 277 F.3d. 426 (3d Cir. 2002). Neither establishes that probable cause does not exist in Epps's case.

In Zimmerman, the government conceded that there was no probable cause to search the defendant's home for child pornography. 277 F.3d. at 432. The affidavit "contained no information that [the defendant] ever purchased or possessed child pornography." Id. In

contrast, there is evidence that Epps uploaded child pornography.

In Loy, law enforcement, conducting an undercover investigation, sent the defendant, Ray Loy, a video of child pornography to his post office box. 191 F.3d at 362-63. After Loy received the contraband, the police searched his house. Id. at 363. However, the warrant contained no information that Loy actually brought the video home or that he "used his residence in the past for receiving child pornography." Id. at 365-366. It only included a statement by a postal inspector that, based on his experience and expertise, "those who collect pornographic materials involving minors 'commonly . . . maintain this material in the privacy of their homes.'" Id. at 366. However, Loy himself stated that he only kept "stuff that's legal" at his home. Id. at 366 n.3. Given this assertion, the court concluded that the postal inspector's "experience and expertise, without more, [was] insufficient to establish probable cause." Id. at 366.

In United States v. Rankin, the court distinguished Loy by focusing on the fact that the postal inspector's statement was the sole link to Loy's home, and that the only other evidence contradicted that opinion. 442 F. Supp. 2d 225, 233-34 (E.D. Pa. 2006). Rankin involved a nexus between financial documents and the defendant's home in a tax evasion case. Id. The court noted that in cases of tax crime, probable cause is uniformly found when an expert's conclusion that financial records are typically kept at a person's home is paired with specific facts that the person receives and stores financial records at his or her home. Id. at 232. In Rankin, unlike in Loy, there were additional facts to reinforce the expert's conclusion concerning where financial records are typically kept. Id. at 233-34. Additionally, it was not the case, as it was in Loy, that the only fact about where evidence might be found contradicted the expert's conclusion. Id. at 234. The court therefore concluded that there was a sufficient nexus to the

6

defendant's home. Id.

Just as in Rankin, Loy does not apply to Epps's case. Agent Roman's statement that those who collect child pornography tend to keep such material at their home is not the only connection to Epps's residence. Rather, there is evidence that Epps uploaded child pornography from his home when he was living at 202 Marshall Avenue. These two pieces of evidence in tandem establish probable cause that Epps would have child pornography at his home, wherever that home may be. The fact that he changed residences does not undermine that conclusion. Thus, there was a sufficient nexus to 2131 Sears Street.

B.      Staleness and Franks Hearing

Epps also argues that the information concerning the uploads was too old to support probable cause. He further asserts that he is entitled to a Franks hearing due to the omissions and misrepresentations in the affidavit concerning the dates of the uploads. The Court rejects both arguments. Because these two issues are related, the Court will address them together.

(a)     Legal Standard

In Franks v. Delaware, 438 U.S. 154, 155-56 (1978), the Supreme Court held that "a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). "[W]here the defendant makes a 'substantial preliminary showing' that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks, 438 U.S. at 155.

To determine whether the false statement or omission is necessary to a finding of probable cause, a reviewing court excises false statements from the affidavit and supplies omitted information. Yusuf, 461 F.3d at 384.

"Age of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence." United States v. Zimmerman, 277 F.3d. 426, 434 (3d Cir. 2002) (internal quotations and citations omitted).

(b) Materiality and Staleness

Although the affidavit implies that the uploading occurred approximately 24 to 12 months before the warrant was issued, the actual gap in time was approximately 26 to 20 months. Specifically, the affidavit incorrectly states in paragraph four that the uploading occurred from May 4, 2009 through March 12, 2010, whereas the uploading actually occurred between February 19, 2009 and August 31, 2009. The affidavit also contains the misleading header, "Activity in 2010." Finally, the affidavit does not contain any information concerning the dates of the uploads. The Court concludes, however, that even if the affidavit reflected the correct dates, the information would still not be stale and probable cause would still exist to search Epps's home.

(1) Staleness in the Context of Child Pornography

"Information concerning [child pornography] crimes has a relatively long shelf life."

United States v. Vosburgh, 602 F.3d 512, 529 (3d Cir. 2010). "[P]edophiles rarely, if ever, dispose of child pornography." Zimmerman, 277 F.3d at 435. "Presumably individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain." Id.

Additionally, "[i]mages stored on computers can be retained almost indefinitely, and forensic examiners can often uncover evidence of possession or attempted possession long after the crime has been completed." Vosburgh, 602 F.3d at 529. Finally, evidence of a "continuing offense of receiving child pornography" retains its usefulness even longer than information regarding an isolated instance. See Zimmerman, 277 F.3d at 434. However, it is not the case that "information concerning child pornography crimes can never grow stale." Vosburgh, 602 F.3d at 529.

Courts in the Third Circuit have concluded that long periods of time between the offense conduct in child pornography cases and application for a search warrant do not render information stale. See, e.g. United States v. Eberle, 266 Fed. App'x 200, 205-06 (3d Cir. 2008) (non-precedential) (3 years); United States v. Vaskas, 2012 WL 3731824, at *4 (E.D. Pa. 2012) (19 months); United States v. Shields, 458 F.3d 269, 279 n.7 (3d Cir. 2006) (9 months, in dicta); United States v. Payne, 394 Fed. App'x 891, 894-95 (3d Cir. 2010) (non-precedential) (8 months); Vosburgh, 602 F.3d at 528 (4 months).

Courts of Appeals in other circuits have reached similar conclusions. See, e.g. United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005) (5 years); United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) (3 years); United States v. Burkhart, 602 F.3d 1202, 1206-07 (10th Cir. 2010) (28 months); United States v. Irving, 452 F.3d 110, 125 (2d Cir.

2006) (22 months); United States v. Lemon, 590 F.3d 612, 615 (8th Cir. 2010) (18 months); United States v. Frechette, 583 F.3d 374, 381 (6th Cir. 2009) (16 months); United States v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997) (10 months).

Epps principally relies on one Third Circuit case and two Seventh Circuit cases to argue that the information relating to his child pornography is stale: United States v. Zimmerman, 277 F.3d. 426, 434 (3d Cir. 2002); United States v. Doan, 245 Fed. App'x 550 (7th Cir. 2007); and United States v. Prideaux-Wentz, 543 F.3d 954 (7th Cir. 2008). None of these cases adequately support Epps's argument.

### (2) United States v. Zimmerman

In Zimmerman, there was evidence that the defendant had shown adult pornography to a minor. 277 F.3d at 434. This occurred ten months before the warrant was issued. Id. at 434. The Court held that such information was stale, emphasizing that there was no evidence of a "continuing offense." Id. at 433-34. The court also discussed the fact that there was nothing in the warrant that addressed whether adult pornography is typically retained, as child pornography is. Id. at 435.

The court in Vosburgh focused on this distinction between adult and child pornography. 602 F.3d at 530. Vosburgh dealt with whether four-month old information was stale in the child pornography context. Id. at 528. The court distinguished Zimmerman, stating that "the hoarding presumption applicable to child pornography collectors was inapposite, and nowhere did the affidavit in Zimmerman address whether adult pornography is typically retained." Id. at 530 (internal quotations omitted) (emphasis in original). The Vosburgh court concluded that the four-month old information relating to child pornography was not stale. Id. at 531

10

Zimmerman similarly does not apply to Epps's case. That case concerned an isolated instance of adult pornography. In this case, there is evidence of ongoing uploads of child pornography. Just as the "hoarding presumption" was applicable in Vosburgh (but not Zimmerman), it is applicable in this case as well. Additionally, the evidence of a continuous offense further supports the conclusion that the information is not stale.

     (3)  United States v. Doan and United States v. Prideaux-Wentz

Epps's reliance on Doan and Prideaux-Wentz is also misplaced. In Doan the Seventh Circuit concluded that seventeen-month old information concerning child pornography subscriptions was stale. 245 Fed. App'x at 554-55. In Prideaux-Wentz, the Seventh Circuit determined that information concerning child pornography uploads that could have been up to four years old was stale. 543 F.3d at 959. However, these cases are not binding on this Court, they are against the weight of authority, and they have been called into question by United States v. Seiver, 692 F.3d 774 (7th Cir. 2012).

In Seiver, Judge Posner, writing for the court, disparaged cases from other circuits and his own circuit (including Prideaux-Wentz) that turned on whether someone is a "collector" of child pornography. Id. at 775. He based his analysis solely on the fact that files can be recovered from computers after long periods of time, even after a user "deletes" the file. Id. at 775-77. He stated that staleness is "rarely relevant" in the context of computer files and that "[o]nly in the exceptional case should a warrant to search a computer for child pornography be denied" on staleness grounds. Id. at 777, 778.

     (4)  Conclusion

Given the tendencies of collectors of child pornography to hoard their materials and the

11

ability to retrieve information from a computer after long periods of time, this Court concludes that the information in the affidavit at issue in this case was not stale. This conclusion is the same whether based on the correct timeframe of 26 to 20 month old information or on the incorrect 24 to 12 month old gap stated in the affidavit. Thus, the misstatements and omissions were not material to a finding of probable cause, and Epps is not entitled to a Franks hearing.

    C.    Good Faith

Even if probable cause did not exist, the search of Epps's home survives challenge under the good faith exception established in United States v. Leon, 468 U.S. 897 (1984).

    (a)    Legal Standard

The Leon good faith exception provides that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" Loy, 191 F.3d at 367 (quoting Leon, 468 U.S. at 922 n.23 (1984)).

The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception. See Leon, 468 U.S. at 922; Williams, 3 F.3d at 74. There are, however, situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception. Leon, 468 U.S. at 922-23. These are instances when "the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights. . . ." Davis v. United States, 131 S. Ct. 2419, 2427 (2011). The Third Circuit has identified four such situations: (1) "where the magistrate judge

issued the warrant in reliance on a deliberately or recklessly false affidavit;" (2) "where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;" (3) "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) "where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." Virgin Islands v. John, 654 F.3d 412, 418 (3d Cir. 2011). However, when police conduct "involves only simple, 'isolated' negligence," the good faith exception applies. Davis, 131 S. Ct. at 2427-28.

Epps argues that the first and third situations apply in this case, and that the government therefore does not get the benefit of the good faith exception. The Court rejects that argument.

(b)  First Situation: Deliberately or Recklessly False Affidavit

The first situation in which the good faith exception does not apply is "where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit. . . ." John, 654 F.3d at 418. "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know. Yusuf, 461 F.3d at 383 (discussing the issue in the context of a Franks hearing). "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." Id.

In this case, Agent Roman was negligent when he stated in paragraph four that the uploads occurred until May 12, 2010 and when he used the header, "Activity in 2010." He was also negligent in omitting the dates on which the child pornography was uploaded. When preparing his affidavit, he should have looked at the Cyber Tipline Reports themselves, not just

13

the Task Force's summary of them. Although Agent Roman made mistakes, such mistakes do not rise to the level of reckless or deliberate conduct.

        (c)       <u>Third Situation: So Lacking in Indicia of Probable Cause</u>

The third situation in which the good faith exception does not apply is "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. . . ." <u>John</u>, 654 F.3d at 418.

The Court has already concluded that the information concerning uploading was not stale and that there was a sufficient nexus to 2131 Sears Street. Given the authority already discussed, even if probable cause did not exist, the warrant, at minimum, contained "indicia of probable cause."

Thus, even if the warrant were not supported by probable cause, the good faith exception would apply.

**V.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress Physical Evidence and Statements and Request for a Franks Hearing is denied.

An appropriate order follows.